518-0138 Have a good evening. My name is Edna Kirstein, I am with Wilson-Elster in Chicago, and I represent the Defendant M-Class Mining Health Protection Plan, which is an employee welfare benefit plan. We're here today on my client's appeal of the circuit court in Madison County's rulings on a number of different issues. We raised in our appeal issues relative to venue, we raised in our appeal issues relative to the standard of review that was applied by the court relative to the plan administrator's benefit determination, we raised issues relative to the grant of summary judgment to the Watkins, and we raised issues relative to the award of damages versus benefits and an attorney's fee. I want to start my argument today by pointing out that ERISA governed a specific case, that's the Employee Retirement Income Security Act, and it has a very own set of rules connected to it, and it follows certain guidelines which determine how this case is to be reviewed. ERISA has an exclusive remedy provision. It only allows what ERISA itself allows, meaning the statute itself allows certain distinct claims which can be made by claimants against certain very identified defendants, not everyone, just certain defendants, and only certain remedies are allowed. Unlike breach of contract claims, unlike tort claims, ERISA is its own world. And the specific claim... It certainly is. It certainly is, Your Honor. Let me ask you a question. Yes. There's a lot of discussion in this proceeding about your failure to verify or submit affidavits. For example, in the Venues Crime where you indicate that you're not an entity that does business with a corporation. Correct. Nothing verified was filed, no affidavit. What are we supposed to make of that? Is there any argument? A plan is a plan as defined under ERISA. An employee welfare benefit plan is a specific entity as it's defined by ERISA itself. It is just simply not a corporation. It is within... But in the ERISA venue provision on a federal law, it talks about whether an entity is doing business for purposes of a federal venue. Do you agree with that? In ERISA itself? Yes. It says that the plan may be sued wherever it's administered. Well, there's a lot more to it than that when it comes to venue under ERISA. Yes or no? I would disagree with that. Okay. So, let's go back to Illinois venue. Yes. Which venue provision do you think that this court should apply? I believe that the federal venue provision applies, which is for the plan... Even though there's concurrent jurisdiction here? Even though, yes. Because an employee welfare benefit plan is its own animal. It is simply not a corporation, and it does not seem proper to assume that it does business, such as any other corporation, because it's just not... So, what is the federal venue plan? ERISA itself requires that plans are sued where they're administered. Only where they're administered, not anywhere else. Plans may be sued where the funds are located. That is possible as well. But the general standard is that plans are sued where they're administered, which is where the plan administrator is located, and the address in this specific plan is in Marion, Williamson County. The court did not... Well, if you believe that to have been true, why wouldn't you have filed something to ask the court to take judicial notice of that fact? The plan was before the court. Well, how does... It stated the address in the... And you... They claim that the plan was in Madison County. Whether that's true or not, at this point, my questioning item... Well, the plan itself contradicts that. The plan says where it's administered. Okay. But how does the plan get before the court unless you make the record for it to do that? Are we... You can soak the lips, you're pleading, and say, okay, that's it. But the plan was before the court. For example, the plan... It was... The exhibits and everything? It was attached to the complaint, Your Honor. So, it stated... So, it was in the complaint. It was... I'm sorry about that. In fact, there was... No one was even asked for that complaint. Yes. Well, the plan itself is tremendously voluminous. It's a huge document. It's tremendously voluminous. And... So, your position is that the plan was already before the court because the plaintiff stood it before the court. That's correct. Okay. I got it. Okay. And given the fact that it specifically includes the disclosures that are very standard for a VISTA plan, including disclosure of the sponsor and disclosure of the place of administration, we did not think that any additional indication was necessary, given that the documents speak for themselves. Okay. Okay. So, do you have an opinion as to whether your plan could waive the convention provisions by continuing to proceed through the hearing? You mean once we had lost? Uh-huh. I don't believe so. I don't believe so. It's an ERISA rule. We had filed a motion. We had requested it. It was denied. I mean, we went forward at that point. At the end of this proceeding, did you file any post-trial motion of any kind? We filed a motion for reconsideration, but we did not raise that specific issue. We did not raise the venue issue. That is correct. So, that's what got me thinking about a waiver. Uh-huh. Do you think that the failure to file that in the motion to reconsider could allow for any waiver of the issue of venue? I would say that the regurgitation of our arguments wouldn't have been necessary. We made the record, and we, as soon as our summary judgment motion was denied, we assumed that we would appeal, and here we are. And as a result of that, we felt that there was an order that was in the record. We disagreed with it at that point. There was obviously a contested order against us, and we did not think that we waived any arguments, given that the law of the case went forward, meaning we had said what we had said. We believed the plan set its terms very clearly. Any further argument would have simply been a regurgitation of our same arguments, which the circuit court did not want to entertain. Okay. Well, I can proceed. I'm probably interrupting again. No, not a problem at all. It's a complete assumption. Talking about EVISTA, one of the principles of ERICA, aside from the fact that it sets out very distinct claims that can be pursued, is also that the decision on these types of claims, especially claims for benefits, like the one here, which is brought under 29 U.S.C. Section 1130-2A1B, is that the plan terms govern what exactly happens. That's not my question. Sorry. Not a problem. The venue provision in ERISA is much broader than what you represent. The venue provision says it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. Okay. Okay. So now, the question I have for you is, if you quote the plan as a defendant, and then you move to the plaintiff's complaint saying that you're an entity doing business in the Madigan County, the federal ERISA statute allows for lawsuits where you may be found. That's very similar to where you're doing business as it is in the state statute. But a plan just does not do business, and it's only found where it's administered. I mean, a plan is- They make it in the alternative under the federal venue statute. They make it in the alternative, that is, or where it may be found. Well, where a defendant may be found, because there are other defendants that are possible under ERISA. For example, the plan administrator can be sued. For example, a plan administrator is usually a company. A company can certainly be found somewhere and reside somewhere. But a plan is not a company. It is technically a vessel. It's a trust for all intents and purposes, possibly. It gets created somewhere, and that's where it's being administered. It does not, by itself, do anything anywhere else. Well, I understand. In fact, it's kind of like you say. It's a trust where people get money, and then it's administered. It's much like a plan service, a health care service. Right. It's like an account or possibly- It's a service that's being created for employees. That's exactly what it is. And employees, incident to their employment, are being afforded coverage or the possibility to make claims for benefits, which follows the terms of the plan. It's just not an entity that goes out and contracts and hires people and does things. It solely exists for the purpose of providing benefits to employees. Is there an agent that also administers the administration of the plan? There's MCA. MCA. Which was retained by the plan administrator. Not the plan. The plan administrator to perform day-to-day claims processing services on behalf of the plan administrator. Yes. But, again, that has nothing to do with the plan in and of itself. That's the plan administrator who has the discretionary authority to make benefit determinations under the plan and who, for day-to-day processing, for simple claims, for the receipt of forms, for anything that would fall into the day-to-day processing of health claims, may retain a claims advisory agent or a third-party administrator, which is what happened here. MCA is a claims advisory agent, somebody who handles the day-to-day business because that's what they do. The plan administrator in this case, M-Class Mining, is a mining company. Processing of benefit claims is not necessarily what they do on a day-to-day basis. Hence, it makes sense to have somebody who is in the business to do so, a claim advisory agent who assists in the determination, which is what happened here, subject to the approval of the plan administrator. Again, what happened here, the plan administrator approved the denial of these claims and the plan document, which is the part that governs this entire lawsuit. It's all about the plan document. Everything that happens and everything that stands and falls has to follow the terms of the plan document. The exclusion is in it. And the plan has leeway to exclude any types of benefits it chooses to exclude at any given point in time. There is no standard that is applied to plans to pay certain benefits or not to pay certain benefits. Just like a plan makes it out what benefits it wants to grant and what benefits it does not want to grant. As long as it doesn't run afoul of public policy. Public policy would be my argument, does not apply to employee welfare benefit plans. And I think the sisters of the third order case from the Seventh Circuit are very succinct on that specific point. A plan follows ERISA. ERISA does not have certain policies as to what is to be governed and what is not to be governed. A plan may afford benefits to a certain type of employee, not to another type. That is their prerogative. They may include an exclusion. They may consider certain things high risk. They may not provide benefits for certain activities. They may not provide benefits for certain surgeries. They may not provide benefits for drug treatment. That is their prerogative. And those terms are what should govern any type of review determination that is being made by a court. Unless the terms are improperly applied under the NOVO standard or unless the determination is unreasonable under an arbitrary and capricious standard. And we certainly submit this is an arbitrary and capricious case. Meaning the abuse of discretion or arbitrary and capricious standard of review applies to any court's review of the determination at issue here. Because the plan, again, and I'm not trying to belabor the point, but the plan terms themselves grant the plan administrator discretionary authority to make the determination. Yes, the plan administrator. Same entity. The sponsor. No, it does not. So, was the plan administrator, I thought the plan administrator was a third party. No, it is not. The plan administrator is M-Class Mining owned by Foresight, I believe. Foresight Mining. So, the plan administrator was the employer. That's right. The sponsor and plan administrator, which is how EVISA envisions it. What I'm confusing on that because it seems to indicate, the claimant seems to indicate that the plan administrator and the employer were different from the point of view of the review of the case, the ultimate review of the decision-making process. Yes, no, that is certainly not the case. M-Class Mining is the plan administrator here and M-Class Mining made the determination to deny benefits as a result of the exclusion provision, which we submit as clear and unambiguous. It's an illegal activity exclusion provision, which is something that is quite commonplace in health plans. Health plans do not want to take... The illegal exclusion provision, though, is very dependent on how it's applied and as Justice Chatelain indicated, if it's applied in some manner to exclude conduct that necessarily didn't cause or contribute to the injury, it may be against public policy. At least there have been some people on that. Not in the Seventh Circuit. That's not what I asked you about. At the Seventh Circuit rules, it's illegal exclusion? Illegal activity exclusion, yes. No. On this specific one in this case, no. Okay, so they ruled on the fact that illegal exclusion is not a part of the cause of the injury? They ruled on that issue? Yes, they have rejected that theory. Which case are you referring to? I'm referring to the Sisters of the Third Order case, where the court made it very clear that there's no causal nexus required between the illegal activity and the injury. For denial of benefits. For denial of benefits, right. And the court made also clear that while, which is exactly the word that our plan uses, is a temporal condition only, not a causal condition. So that rather than saying due to or as a result of, our plan says while. And while means that at the time of. Not anything else. So no causal nexus, just the temporal one. And I think we can all agree that a temporal condition is certainly given here. The injuries occurred while the motor vehicle was driven in an uninsured state. And that that's against the law, I think we can all agree on. That's why Illinois law does not condone. Okay. I'm sorry to interrupt you. No problem. We tend to do that. Yeah. There is some evidence that there was coverage for this vehicle. Why is it that you dispute that? I don't believe there's evidence that there was coverage. I don't know why you dispute that. Because the. They committed a policy declaration. Because what happened was when they initially applied for the coverage, a policy declaration was issued. However, the coverage left, which is what the policy declaration wouldn't show. I know. But the claimant argues that they submitted evidence to the court that shows she had insurance coverage at the time of the accident. She has pointed to the initial deck page that was issued when she applied for the coverage. Auto policies are six-month policies. And when you initially apply for an auto policy, you get a deck page which says from X to X policy will run. What happened in this specific case, according to state auto documents, which were received and included in the administrative record by my client, is that a credit check after the policy was initially issued resulted in an increased premium. That increased premium was not paid by Mr. Watkins. As a result of that, after it had been initially issued, the policy lapsed in December prior to the injury. The injury occurred in February the following year. The premium had never been paid. All of those documents are in the administrative record and were specifically pointed to in our motion, in our brief. And as a result of that, during the lapse, given the fact that the insurance was never reinstated, yes, there is a deck page initially, but that doesn't mean that there was actual coverage. And once the deck page was submitted to my client, state auto was contacted to verify that there was still coverage. And that's also in the administrative record demonstrating that state auto said there was no coverage at the time of the accident in February of 2016. I have a question. Yes. We're going to go a little bit longer. Okay. You'll have additional time, but I'm sure there's still a few questions. Absolutely. You know, the idea that you said that it's already been decided in the Seventh Circuit that there need not be any causal connection between the legal activity. I think the claimant posed a number of scenarios where it would be very clear that there was a potential illegal activity, but it had nothing to do with the accident. And a lot of them appeared pretty observed. And so, observed in the sense that that could be a denial of coverage. And so, I just want to ask you about one that just came to my mind. You know, somebody, let's say, was driving 10 miles over the speed limit. That's an illegal activity. This also happens to be a traffic situation or potential traffic charge. Could you have denied coverage in that situation? If there were claims that resulted from an injury which occurred while the person was speeding, yes. Okay. Just like driving on a suspended driver's license. Okay. I want to ask you another question. Yes. The proof of damages, they submitted bills and things of that nature. You all submitted something that showed discounting of the bills. Do you believe that you submitted sufficient evidence, assuming that you had any liability, for the court to arrive at any number that would have granted you appropriate relief as opposed to the relief that was granted? Frankly, the position that we have always taken in this case is that the claims should be processed, meaning that it is not a money award in an ARISTA case. For example, in a long-term disability case, a claim gets reinstated, which basically means that the claims administrator or the plan administrator goes back to the point where they would have started benefits, and they calculate the benefits, how they would have been paid. And in a health case, it should be exactly the same way. A certain number of claims have been submitted in this case. This is not a question of paying the claimant a lump sum of bill charges, but it's a question of processing those claims in accordance with the terms of the plan, which is what we had asked the judge to fund. Because the plan, in and of itself, sets out what exactly happens. Network providers submit their claims directly to the plan, and the plan paints them in accordance with the contract that these network providers have in place. The claimant is not balance built in those cases. So what happened here, because the claimant just simply added up all the charges, and there was no further verification of any of this undertaken by the circuit court, we ended up with a number which basically just tells somebody what the medical expenses were. But it does not tell anybody what the benefits are. Did your plan administrator actually go through and process what the benefits would have been paid? Yes, that sheet that we submitted. Exactly. We took plaintiffs' numbers and said if we were to process these claims as if we had received them and approved them when they were submitted, this is what we would have paid. And given the fact that the majority of these people were indeed in-network providers, there wouldn't be any balance billing. So even if we're talking about damages, which we submit are certainly not equitable under ELISA, but even if we were talking about damages, there aren't any here. Because the balance billing not being possible means that the medical expense is being extinguished by the benefit that's being paid to the network provider. So what resulted in this case is a huge windfall to the plaintiff, meaning he was much better off or he would be much better off if this check were cut and this money were to be paid to him than he ever would have been had he submitted these claims and had them been paid the proper way, meaning had they not been denied and had all these charges been approved, my client would have paid in the vicinity of $200,000. And that is the number that we presented to the court. You know, the problem with technology today is that while you're arguing, I can look up all the cases. You were talking about that. Sure. The sisters of third order that you relied on was a drunk driving case where the guy was drunk. Correct. And the illegal exclusion was related to his interest. He was drunk, driving, and injured, which is very different than what we asked for. But the court said specifically that that didn't matter. Well, that wasn't the holding of the case, though. Well, the holding of the case is that the exclusion was appropriate because it was related to the injuries that were caused. And my question to you is, is there any... Okay. I don't read the case that way. I mean, the largest part of the discussion in the case is about whether the expenses incurred, how to be incurred while the illegal activity ensues.  And the court basically said, well, we are not requiring somebody to basically hold a doctor at gunpoint so that the medical expenses are incurred at the time of the illegal activity. But we understand the illegal activity exclusion in this specific case to mean that expenses that result from injuries, which happen while someone was engaged in an illegal activity, are excluded. But the illegal activity here means drunk driving. That's one of the lapses in the policy. That's right. But the other case we cite, too, was a suspended license. They're still illegal, either one. And the Seventh Circuit made it clear that the ruling was not because it was drunk driving, but the ruling was because it was illegal. And you cite a case where there was no nexus between the illegal activity and the exclusion. Correct. A suspended driver's license. And we distinguish... And what case was that? I think that's the Riling case. And there was a Riling? Mm-hmm. And we distinguish the cases, the plaintiff's case, because all of those cases, while they do require a causal connection, do that because of the plan terms. It's all about the plan terms, which is basically where the box stops. And I would say there is no such thing as a public policy prohibition. That is right. Under federal law. Under federal law. That's the case in which you agree that we're bound by a risk. Yes. Right. And our risk assessment says while. It does not say as a result of or due to. That's why. I do see the argument, Julie. I do want to tell you that there's a case that I was personally involved in, dealt with venue. I'm going to give you the citation of it. It's 137, if that's up to seconds. 1091. Because I think it goes back to this venue issue, which I think is concerning me. Because my question to you is, if venue was inappropriate in Illinois state law, we say that venue is not fatal. The judgment is not void just because venue is inappropriate. I think the federal law would say it's not. Would you agree with that? I would agree with that. Yes. So the question then becomes, if you have a judgment, and the judgment is rendered in the wrong place under federal law, what do you think is the appropriate outcome for this case? What relief is your client having? If the transfer issue is an issue? If anything is wrong. Let's just put it that way first. Well, a couple different outcomes are possible. Okay. If the venue issue is the first issue and the court agrees with our position that venue was improper, basically we would start from the beginning in Williamson County, meaning the case should be transferred. And then we have to refile our motions for summary judgment and see what happens. If the venue issue is what it is, and Madison County was the proper venue due to state law, due to a lack of an affidavit, whatever the court may decide, and we move on to the motions for summary judgment, given the fact that they were competing motions on the administrative record, I think the court can either affirm or the court can sua sante grant the motion on the other side, meaning we posit that our motion should have been granted. And our request would be to the court to do exactly that, to reverse the order as it was entered by the circuit court and to grant summary judgment to my client on the issue. There is another alternative. The case could also be remanded to the circuit court to make additional findings regarding anything else, either by way of additional briefings. Another possibility is to remand the case to my client to process the invoice. But that would usually go hand in hand with an affirmation of the summary judgment ruling in favor of plaintiffs and then a remand to go ahead and do whatever they should have done had they approved or would have done had they approved the benefits in the first place, which then goes to the damages issue. I think it basically goes in three stages. If venue is incorrect, then we go to Williamson County and start over. If venue was correct, we go to the summary judgment stage. If the ruling was incorrect, then my client could be granted summary judgment and the case is over. If venue were incorrect, why couldn't this court transfer for a finding on damages? Well, because damages cannot be awarded. Maybe not. I mean, maybe the court could be asked to rule on the existing briefs or the issue could be taken as it is and have the court just review the motion for adjudication. The last thing, I wouldn't be so sure. But I could see that it gets transferred and the court rules on the existing briefs and the administrative record. Given the fact that the administrative record is what it is, arguably, maybe no supplemental briefs would be needed and the case could be transferred for a separate ruling. Possibly. Thank you. I absolutely understand. Okay. You'll have a few minutes. I understand. Afterwards? Yes. All right. Thank you. I appreciate it. Thank you. Good afternoon, Justice. Good afternoon. May it please the Court. Let me start again. David Antignoli representing the plaintiffs, Jeff Watkins and his daughter, Caitlin. Let me begin with the issue of venue. Justice Cates quoted the applicable federal statute. There's two things that are important about that statute for purposes of this case. First of all, on its face, it applies only to cases filed in the district court. It does not apply on its face to cases filed in state court, where the state court has concurrent jurisdiction. But let's assume for a moment that the federal venue statute does apply. I'm all for it, because the federal venue statute says, I can sue these folks anywhere in the Southern District of Illinois. Madison County is in the Southern District of Illinois. That was one of your arguments that you raised in your brief, which is why I asked the question. But if you look at the case I just gave you that I told you I was involved in, I watched it and it's true. Was it a state court case? No, it was a federal case. It was a federal court case. And the court said it could not be sued in the Southern District of Illinois because the people were residents of that. It has to be where the plan is found, the administrator has found, the brief occurred. The plan has admitted that it can be found in the Southern District of Illinois, in Marion, Illinois. That's admitted in this case. Well, that's where they want to go, is Williamson County. Well, the statute doesn't talk about counties, Justice Gates. The statute talks about the district. The district comprises Williamson, Madison, and a lot of other counties. The court can take judicial notice of that. And we can't take judicial notice of that. That's why I began with the venue issue, because I'm not for sure that, number one, you want to make that argument, but number two, you are not in the federal court. You chose to be in the state court. And I'm fine with the state court, because under the state court rule, we win too. But explain to me how an ERISA plan can be a corporation or other entity doing business in Madison County. Because the statute says that an ERISA plan is a legal entity, it can contract, it can do business, it can sue, and it can be sued. And it has no personal liability. It has all the classic features of a corporation. I'm not sure that's true under Dimer anymore. That's enough. When you talk about a corporate entity doing business and what that means. Well, this is not a Dimer case, because Dimer involves personal jurisdiction that did not involve venue. Well, do you think venue and personal jurisdiction have anything to do with one another? I think they are distinct concepts. And I think if I have personal jurisdiction, I may or may not have venue. If I have venue, I may or may not have personal jurisdiction. Okay. So they are not. . . You don't have personal jurisdiction under this ERISA plan in Madison County. Jurisdiction involves the state's ability to exercise control. It doesn't involve the county's ability to exercise control. Illinois certainly has jurisdiction over this plan, personal jurisdiction. The argument of personal jurisdiction has never even been raised in this case, and as such, it can't be raised at this point. You don't think we have an obligation to determine whether we have jurisdiction or not? The appellate court has jurisdiction, as I understand it, from any judgment of the Circuit Court of Madison County. That's the jurisdiction of the appellate court. I think your question, Justice Gates, involves personal jurisdiction over a particular defendant in a particular forum. And there's no question that we have personal jurisdiction in this case. And even if we didn't, there's no question that it has been weighed, because the defendant has never claimed lack of personal jurisdiction. Okay. Then there was a distinct concept. We alleged in our complaint that they're doing business in Madison County. The plan did not rebut that allegation. In fact, as we sit here today, the only thing in this record regarding where this so-called plan is administered is in the plan at, I think it's at page four of the plan. Let me give you the exact site, Your Honor. Yes. It's C-22 of the record. And in that page of the plan document, it gives a mailing address for the plan administrator in Marion, Illinois. It does not say where the plan is administered. It does not say where the plan does business. It does not say that that's the only or the exclusive office of the plan. That's what they're relying on to prove an unverified, unsubstantiated motion to transfer venue. The standard, the legal standard to determine appropriate venue, is if the defendant has an objection, the defendant has the burden of proving the facts, the specific facts showing lack of venue. And it must do so by affidavit or other competent evidence. The only thing in this... You say it must do so. I think the question is if it may do so. There's no requirement for it to do that. I mean, they could rely on the record. Well, the case law is very clear. And the record doesn't consist of the representations of counsel. I totally agree with you, but can they rely on your record? Sure, they can rely on my complaint, because that was before the court at the time the motion for venue was decided. And as such, my complaint is an evidentiary admission that the other side can use. There's nothing in the complaint that establishes the place of administration of this plan. There's a page in the plan that gives a mailing address. It doesn't say where the plan is administered. Pardon? When you think about the issue of waiver of this venue issue, did it raise it in any motion to reconsider? Did it go ahead? Did it? I agree with opposing counsel. The issue of venue, once it has been properly raised, can be argued on appeal from a final judgment. So it's preserved. I think that it is preserved. Okay, thank you. I would qualify that in one respect. If you look at the motion, it's only preserved on the basis of the things they argued in the trial court. They never argued in the trial court that the plan should not be treated as a corporation for purposes of Illinois or federal law. They never argued in the trial court that the court was bound by the federal statute and that the Illinois statute did not apply. They cited those statutes, but they were kind of on the fence. And for the defendant to say in his reply brief that venue is uncontested is simply wrong. Let's move on to a couple of the other issues. No, no, no. I mean, if you have more on the venue. No, I've said enough on venue. I want to, however, correct one thing that opposing counsel said in terms of what evidence was submitted to the plan before the case got into court. Procedurally, what happened in this case is, and in fact, I'm going to go back to your question, Justice Cates, about the plan administrator versus the third party administrator. It's important to distinguish those terms. The plan administrator in this case is the employer. The employer hired a third party administrator called MCA to do claims processing. It is the third party administrator, MCA, that called all the shots in this case. We go back to the spring of 2016 when the first medical bills were submitted. MCA writes a denial letter. Not the plan administrator, but MCA, the third party administrator. And it says, we're denying the coverage because you were driving and your father's car didn't have automobile liability insurance. Under the plan, Jeff had a right to appeal that decision to the plan administrator. Jeff exercised that right. And when he exercised his right of appeal, he submitted, with his appeal papers, a declarations page. And contrary to what Ms. Kirsten has told you, it was not the original declarations page, your honors. It was an amended declaration page. I think her point was that that did not determine whether or not the premiums were current. Her point, well, I disagree. For this reason, the citation to the record is C-120. This is an amended declaration page, and on its page it says, this amended declaration page supersedes prior declaration page issued. And then I look at the issue date, and it says August 8, 2016, which is after what they were relying on when MCA denied the benefits initially. And, of course, after the accident. And it says with... I think that was her point, was after the accident. Yeah, if it's after the accident, that's my point, too, Justice Kagan. If it's after the accident, and it says coverage was in effect during the period covered when the accident occurred. So there was a spread of what? There was a spread of several months. So if you look at this declaration page, the one that was submitted in connection with Jeff's appeal, it says there was coverage in effect. Now, I understand that there was conflicting evidence in the administrative record that preceded that, but the fact remains that I've got proof in the record of automobile coverage. And if you look at the plan, it says when I appeal, and I provide evidence, it's up to the plan administrator to explain why that evidence isn't going to be accepted. Now, the plan administrator is MCA. No. The plan administrator is M-Class Mining. It's the employer of Jeff Watkins. And the plan administrator is the boss. The plan administrator is the fiduciary. And what this plan says is that the third-party administrator, this MCA outfit, has no fiduciary capacity and no discretion. MCA shouldn't even have been making these decisions. Nonetheless, MCA made the initial denial, and MCA then denied the appeal. That appeal, in fact, there's evidence in the record, we cited it in our brief, of a lawyer for MCA telling MCA you shouldn't be doing this. The plan administrator, the employer, should be doing this. But that question of discretion and who has it and who doesn't is kind of beside the point because Judge Roof, when he decided this case, said, I agree that this should be de novo review. The plan should not be afforded any discretion in terms of its judgment. But I looked at this under both standards of review, and I would reach the same conclusion under a deferential standard of review regarding my interpretation of this exclusion. So Judge Roof did not rely on de novo review to reach his decision. He says the plaintiffs win under either standard, and the reason they win under either standard is because the plan's interpretation of this illegal activity exclusion is so bizarre. Could you go further with that? And I'm sure you are because she states that really there is no requirement under ERISA that there be a causal connection between the illegal activity and the act that's an issue for coverage. Justice Chapman, ERISA does not speak to that issue. The question is, is it required under the language of this exclusion? And every court that has considered language comparable to this says that a causal link is required. And I'm going to go through those cases in just a moment because my reading of those cases differs from that of the Plans Council. And I want to start with the case Sisters of the Third Order, which apparently is the one that Ms. Christian says stands for the proposition that causal link is not required. Well, as Justice Cates noted, it's a drunk driving case. There was clearly a causal link. And in the course of discussing the issue of causal relationship, Judge Easterbrook, who wrote the opinion, said that the district court construed the term in the exclusion while engaged in as meaning as a result of. In other words, the illegal activity had to have a relationship to the accident and injuries for the exclusion to apply. But Easterbrook does go on to say, as your opponent indicated, that that's because under federal law they can do that regardless of what the Illinois public policy would otherwise say. There's language that says that. The allusion to public policy is not germane to the interpretation of the exclusion, which Judge Easterbrook said, when I look at the phrase while engaged in, that means to me resulting from. And since the accident in this case, the drunk driver hitting the tree, was related to his state of intoxication in violation of law, the exclusion applied. There has never been a case where, and counsel says the Rylands case, and I'm looking at the Rylands case that was decided by a district court in Kansas in 2014. It doesn't stand for the proposition that a causal link is not required. I asked the court to look at the case at page 1370, and the court says a causal link is required. And then, of course, in our brief, we've cited the Shelby County case, and the Becos case, and at least two other cases in which the courts have denied use of this illegal activity exclusion when there was no causal link between the injury and the so-called illegal act. And the reasoning in these cases is very persuasive. Why do they put these illegal act clauses and policies in the first place? They put them in there because someone who's engaged in some intentional illegal activity is going to be more likely to get hurt. If I'm driving my car drunk, or I'm a reckless driver, I may be more likely to get hurt. But if I'm driving my car with an expired license plate, I'm not more likely to get hurt. I am not increasing the risk of the plan. I'm not increasing the risk of injury. The interpretation of the plan wants to foist upon its beneficiaries, is that it doesn't make any difference. It's just arbitrary. If you happen to be doing something that's illegal at the time you get injured, you're out of luck. Was she charged with driving too fast or anything? No. No, that's a very good point. She was neither charged nor prosecuted. But she was a passenger, wasn't she? No. She was a driver. Oh, she was a driver. Yes. Driving alone, on her way to school in the morning. Was the seatbelt restriction a violation? Well, no. There was no alleged violation of the seatbelt law. Whether she was wearing a seatbelt or not, the record does not restrict. And do we even know whether or not she was engaged in illegal activity? In other words, if the premium had lapsed, was it her dad's fault? Did she know it? Was she supposed to pay the premium? I mean, to me, being engaged in illegal activity seems to require some kind of personal action. Some volitional action, I would agree. And I would agree with that because that relates to the level of risk that the plan is undertaking. If I am totally innocent of any knowing misconduct, I am certainly not increasing the risk of injury and I'm not increasing the plan's exposure to medical expenses. And, you know, you make a point, Justice Welch, that I think is something that's kind of an overarching issue in terms of the interpretation of this exclusion. The basic cardinal rule when looking at an exclusion, an insurance policy, a health plan, or what have you, is would a reasonable beneficiary, a reasonable insured, understand this exclusion as one which would result in the denial of benefits? I submit to the court that no reasonable insured beneficiary could read this clause and say, if I get hurt while I am involved in a de minimis trafficking fraction that has nothing to do with my injuries and has no impact on the risk of the plan, I will still not be covered. No reasonable person could ever envision that sort of a result. And that's what the cases say. Now... Well, when you talk about cases, I think there's a lot of them, and I'm not sure that that's true. There's a lot of them. Well, there's actually... It's been decided over and over again that there's a gaping hole between north and south here. I found two cases only, and they're the only ones that were cited by the defense in the last three. The St. Francis case and the Trudeau case. Both of them were drunk driving cases. Both of them had a causal link. I thought you said the Shelby County case. The Shelby County case is for us. That's what he was talking about in support of their position. Yes. Those were the only cases. And, you know, the plan talks about the Seventh Circuit as if it were the Supreme Court of the Hague. The Seventh Circuit is not binding in any respect on this court. And, in fact, the Seventh Circuit cases don't stand for the proposition that you don't need a causal link. Those two cases stand only for the proposition that illegal activity is not an ambiguous clause, although the cases in other jurisdictions in the Eleventh Circuit, in whatever circuit Kentucky is in, I think it's the Fourth Circuit, and then there's also an Eighth Circuit case. All of those are cited in our brief. They all stand for the proposition that illegal activity is an ambiguous phrase. And the reason they say that is because illegal activity can mean just about anything. And some of the examples that were cited in particular in the Becos case, I think, are quite instructive. According to the planned interpretation of this policy, if I'm in a car that is illegally parked, and a crane falls on me, and I'm injured, I'm out of water. No coverage. Because I was illegally parked at the time that I got hurt, even though my injury had nothing to do with the illegal parking. If I am on a ladder at home, and I'm doing some home remodeling, and the ladder breaks and falls down, and I'm injured, well, I didn't have a permit to do the remodeling work. That's in violation of some local ordinance. I was engaged in an illegal activity. I'm out of water. Even though the alleged illegal activity, not having the construction permit, didn't have anything to do with my injuries, didn't have anything to do with the planned risk. Now, let me turn to the issue of damages before I conclude. And we're going to get back here to the issue that you raised at the outset of this case, Justice's case, about not providing evidence, not providing verification. Damages were not determined on summary judgment in this case. Damages were determined after summary judgment was issued, and after the court gave both sides a full opportunity to present their evidence. So the standard of reviewing the award of damages is manifest way to the evidence. The court should reverse only where the appealing party presents evidence that is strong and convincing enough to overcome completely the evidence and presumptions existing in the opposite party's favor. That's the standard. Let me just interrupt you there. Do you think that when we make this determination, as soon as we find that you're correct as it relates to illegal acts and the benefits are owed, you would agree or disagree that we follow the federal law on what remedies are available? I think you follow the remedies in the federal law. My remedy is provided by the arrears of business action. Okay. The remedy I sought in the complaint and the remedy authorized by issue, by arrears, is twofold. One, I'm entitled to a judgment for the benefits payable under the plan, which is exactly what Judge Ruth gave me, and I'm also entitled to declaratory relief regarding future benefits. But there's an alternative relief. We could remand the plan administrator to pass a benefit that's wrongfully denied, then awarded to you. You could do that, and you certainly have the opportunity to do that. The case law says you shouldn't do it, and I have cited the applicable case law in the brief. And the reason that you shouldn't do it is because look at how this guy was treated by the plan when we did have the appeal. When we did originally submit the claims to the plan, they gave him short shrift. They didn't consider anything. They denied the claim on a bogus basis. They violated a half dozen provisions of the appeal sections of the plan. They're all set forth in our brief. To remand this case to the same plan administrator that took the positions that it did previously in this case would be a remarkable result, particularly when the record contains sufficient evidence as to what benefits were due. Now, counsel for the plan has basically a semantic argument. It says, well, they're objecting to the use in Judge Ruth's judgment of the term damages. But it is semantic. Orissa, and counsel will not deny it, counsel has put it in their brief, allows recovery of benefits payable pursuant to the plan. Judge Ruth made an express finding of, quote, the amount of benefits the plan denied for treatment of the injuries Caitlin sustained, end quote, as a result of the accident. In the judgment, and I'm referring the court to page 60-67 of the record, Judge Ruth itemized the precise amount of benefits due under the plan that were denied based on the illegal acts exclusion. And his basis for doing that was what you submitted into the record. Yes, and what I submitted into the record, Your Honor, were explanations of benefits published by the plan. Classic evidentiary admissions. What did the plan use to oppose the explanations of benefits? An unverified spreadsheet. The plan offered absolutely no evidence whatsoever with respect to the amount of the benefits due. Now, Judge Ruth had on one hand the explanation of benefits that showed the expenses incurred that were denied. And on the other hand, he had representations of counsel. And then at the hearing, and this is cited in our brief too, at the hearing, when Judge Ruth asked Ms. Kirsten, well, what are these discounts, provider discounts that you claim in this spreadsheet should be awarded? And she said, that's confidential, Judge Ruth. I'm not going to tell you. Remanding this case to the plan under those circumstances is not an appropriate remedy, particularly when we have evidentiary admissions that establish the amount of benefits payable. Now, I want to make one point. Did the plan administrator in their review have the EOBs in their record? They had a substantial number of them. They had all of them that had been issued as of the time of the appeal, which was August of 2016. So, they had six months of these EOBs. And, of course, the plan generates the EOBs, so the plan always has the EOBs. And, you know, the suggestion that this should be remanded so that the plan can process the claims, well, that's what the EOBs reflect, how the claims were processed. And that's the numbers that Judge Ruth used. Yes, what he did, yes. Yes, and I do want to make one point regarding this because it's somewhat confusing. You know, I get these EOBs in the mail for my insurance carry and it takes me a half an hour to figure them out. In the reply brief at page 18, the plan cites one of the pages from the EOBs to try to establish that there was some full flaw in Judge Ruth's calculation. And in particular, well, the page that's cited is at the record C1185. And counsel for the plan says, well, there are two charges in there, Pediatric Group, Inc., and Heartland Regional, where there were discounts applied. And the implication is, well, Judge Ruth didn't take that into account. But neither of the claims that are cited by the plan in that EOB were claims that were denied because of the illegal act exclusion. There's all kinds of other claims in these EOBs that don't relate to this accident and were not denied. Judge Ruth's calculation on its face explicitly says, I am awarding benefits shown by the EOBs as having been denied on account of the so-called illegal activity exclusion. Let me ask you this. The benefits that were awarded, you're saying they were limited in scope. Does that mean that other health benefits to your client were perhaps made or unrelated? Yes. And the classic example is C1185 of the record. That's what you're saying. I mean, I just want to make sure. That's what I was trying to convey. Okay. Let me see if I have any other questions. Attorney fees. A subject near and dear to my heart. Yes, I'll bet it is. That's why I'm asking about them. ERISA allows for the award of attorney fees. They're saying that your award is inappropriate. How would you respond to that? Since I'm going to ask them the same question, I want to give you the free view. It's a twofold. I'll give you a twofold answer because the threshold question is whether fees should have been awarded. The incidental question is how much. The Supreme Court of the United States, in construing ERISA, says the award of attorney fees is entirely within the discretion of the trial court. The principal factors, although a number of them have been enumerated, but the principal factors are the amount in controversy and the result obtained. The result obtained in this case was that Jeff and Caitlin won on every issue, and the plan fought us at every juncture in this case. And, of course, the stakes in this case, the other principal factor, what's in controversy, were enormous. We're looking at a child who is permanently disabled that is going to have medical expenses for the rest of her life on account of this injury. And, among other things, the court enjoyed the plan from relying on this exclusion in terms of any future medical treatment Caitlin receives on account of this accident. And that's over and above the treatment she already had, which amounts to seven figures, an amount that would bankrupt Jeff many, many times over. So, when you look at the result obtained, when you look at the amount in controversy, they both suggest strongly that the trial court did not abuse its discretion in awarding fees. What about the multiplier? I didn't understand that. Well, that, of course, brings us to the second half of the question, which is the amount. And the court didn't give me what I asked for, but he did give me more than multiplying the number of hours that I spent by a particular rate. He said that is not going to be sufficient in this case. And he said so because of the factors enumerated by the Supreme Court of the United States in deciding how much an award of fees should be. And I'm going to refer the court to the Hensley case, which is cited in our brief. That seems to be the principal case. It enumerates a number of factors, but the principal factors, and I think the factors that are so important in this case, are the result obtained, the stakes involved, and the fact that I took the case on a contingency basis. Those are all legitimate factors. And in terms of the last factor, the contingency, how is someone like Jeff Watkins going to get a lawyer if he cannot obtain a contingency? He's not going to be represented. And I, as a contingency... I don't know that that has to relate to anything. It's not in the factors that are listed. You received a Lodestar multiplier, correct? Correct, and according to the Hensley case, whether it's a contingency is an appropriate factor to determine whether there should be a fee enhancement. Well, that's not what I was talking about. I was talking about whether or not he should get fees and the amount of fees. And one of the issues that does determine whether he gets fees and how much is the relative culpability of the plan administrator, which according to your argument seems to be very simple. Well, let me just... May I extend this for 60 seconds while I tell you what the plan administrator did to us? All right. We got a plan that says all the discretion and all the fiduciary responsibility is vested in the plan administrator. The plan administrator totally abdicated it. He said, MCA, third-party administrator, you do all this, even though the plan says that MCA can't do all this. Then we appeal. We appeal. The plan and ERISA say we're entitled to a full and fair review on appeal. I submit an appeal five business days later. I get a letter, not from the plan administrator, but from MCA saying, tough luck. They didn't consider any of the arguments that we raised in the appeal. Okay, wait. I thought you were going to do something new. Okay, this one should be better. How was the Lodestar multiplier determined? The judge group asked opposing counsel what was the prevailing rate in ERISA cases. She said between $500 and $600 per hour. And that's the... That's her prevailing rate or yours? It's not my prevailing rate. I'm just not doing all that hourly fee things. Okay. But he relied on the plan's figure. Of $500 and $600 per hour. Correct. And that's how he came up with the multiplier. Yes, ma'am. All right. Thank you so much. All right. Ms. Kersten? Ms. Kersten, before you get out of the box, I'm going to ask you about Shelby County Healthcare Corporation. Sure. Do you mind when I speak? Absolutely. Majestic Star Casino? Yes, Sixth Circuit. Yes. Out of Kentucky. That clearly says what Mr. Anticoni says, which is, doesn't have to be related. As a result of the specific language in Shelby County, which is... As a result of it, not payment. Payment would be due under this clause. It's not related. No. I thought you meant that there has to be a causal relationship. Right. Plaintiff's counsel cites Shelby because they seem to think that Shelby stands for the premise that a causal nexus has to be required. And our argument has been from the get-go that language in Shelby requires such a causal nexus because it says arising out of or in consequence of. Every single case that plaintiff's counsel has pointed this court to has language like this. It talks about due to, arising out of, a consequence of, a planned language, which I submit again, governs in this specific case. And all of these cases that plaintiff's counsel relies on have language that requires a causal nexus. Our case does not. Our case is vile. And actually, one of the cases relied upon by plaintiff's counsel, which is the Boyd case, makes it clear that vile is temporal and not causal. And let me go back to... You're saying that the distinction, and I apologize. Not a problem. It's just a fun concept. You're saying that your planned language is different... That's right. ...from the language cited in all of these other cases. That's correct. That is the key distinction. That is the key distinction. All of these cases stand and fall based on the individual planned language at issue in these cases. That goes back to the Supreme Court in Kennedy v. Planned Administrators of DuPont. The rule is the planned document rule. The planned document rule stands for the premise that a plaintiff's claim for benefit stands and falls with the individual terms of the plan that they're seeking benefits under. And our plan does not require a causal connection, a causal nexus. There's no in-consequence of. There's no do-to. There's no as a result of. There's only a while. So in your reading, you could be illegally parked and have a crane fall on your car and... I'm not a planned administrator. I don't want to mention hypothetically. Your interpretation of the appropriate language that would allow for exclusion with no causal relation. I'm not sure whether illegal parking is engaging. But I really don't want to speculate on a scenario that's not before the court. We have a situation where somebody is engaging. She was driving. She was driving an uninsured vehicle. And that's a different thing. Engaging in illegal parking. I think so. On top of that, we have her admission that she was going too fast, which is in the administrative record. Can we talk about that, that she was going five miles per hour with the speed limit? I don't know. It just says I was going too fast. I do not know. No evidence has been submitted that she wasn't going too fast. But that's not the point. The point is that the vehicle was not insured and she was driving it anyway. And she got in an accident. And there were injuries. She was thrown out of the vehicle. And those injuries occurred. And those injuries occurred while she was engaging in activity that was against the law. And Justice Brooks said that while engaged in, in his opinion, means as a result of. And that's not true. And we pointed that out in our reply brief. Plaintiff's counsel purposefully changes what the case actually stands for. The case discusses two different things. And I mentioned that during my argument before. The case discusses the specific language in that provision which talks about expenses incurred while engaged in an illegal activity. And it discusses whether expenses have to be incurred while engaged. And the problem with that is that the expenses are the medical expenses. The medical expenses are not incurred while somebody drives drunk and hits the tree. Or while somebody drives uninsured and toggles over. It's one of the benefits that he talked about. Well, that's why he interpreted the while in that specific case differently. The plaintiff in that case, which was a hospital, actually said that while should not include as a result of. And that, therefore, the expenses were not incurred while engaged in. So the issue is different. It's not our issue. Our issue is a causal nexus between the injuries and the illegal activity. Okay. I'm just going to ask you this. Yeah. I actually remember when I asked you whether the plan administrator was different than MTA. It is. Okay. I have misunderstood your answer. MTA is the page. It is alleged that MTA did all of the determinations. And that is not correct. That was my question. Mm-hmm. Is your position that the plan administrator fulfilled his duty to the beneficiary? Correct. That is correct. And is this because it was making these decisions behind the scene and MTA was the one that was writing the letter? That's usually how it goes. Okay. It's the job of the clerk. It is correct that they were getting that information that had been denied, not from the plan administrator, but from MTA. That part is correct. But that's always that way. Claims advisory agents and third party administrators communicate. No, that part is correct. There were several other misrepresentations, though, in the argument. Among them, the fact that I allegedly said, oh, I don't know. This is all privilege. Obviously, that's not correct. It's a lot more difficult and complicated than how plaintiffs seem to make it sound. But there's a question I have. I have two more questions. How do we know that the plan administrator was actually providing a full and fair hearing under ERISA? It receives input from a claims advisory agent. How do we know that? How do we know from the record? Where is it in the administrative record? It doesn't have to be in the record. Evidence outside of the administrative record may be submitted to demonstrate the application of an arbitrary and capricious standard of review, which is what we did in this case. What did you submit? We submitted a declaration. There was a discussion between Paul Piccolino, E&E, and MCA, and there are several individuals who were involved in that discussion. They were identified in our brief. And there's the declaration. And there's a declaration in the record from Paul Piccolino relative to that. Okay. They were also apprised of every single decision. They received a copy of every single letter. And they've defended this lawsuit for three years. That was MCA, which I know is also in the principal place in West Virginia. MCA? They're out of Pittsburgh. Well, I know, but some of the claims notices for other kinds of things have to be sent to West Virginia, I noticed in the plan. So they're not just in – maybe they just do these. The other question I have for you is if we find that plan benefits were administered inappropriately, do you agree that you can remand for consideration by your client? You could, but it doesn't have to. You could also just remand for processing of the invoices. The objection that plaintiff's counsel made was with regard to re-review and making of a new decision. That's not what we have posited. What we actually suggested and what we believe still is the proper outcome should the court agree that plaintiff is the party that should prevail at the end of the day, which is that the claims should be processed as they would have been processed back in the day. Because that, only that ensures that benefits are paid. And no matter how many times plaintiff's counsel points at the EUDs, what he's pointing at are the bill charges, not the benefits due. The benefits due among EUDs are zero because the claims were denied. Bill charges do not equate to benefits due. And there's no evidence that needs to be submitted. It's a simple calculation based on the plan documents. The plan itself, again, and I'm going back to the plan because it's all about the terms of the plan. The plan itself says what coverage level is available. The plan itself sets maxes for certain services. The plan itself says that only customary and reasonable fees are to be paid. It itself defines what is due under it. And it certainly does nowhere say we pay bill charges. But that is what Jeshua is awarded. He awarded bill charges. And that is just simply not what ERISA authorizes. ERISA authorizes payment of benefits due. All right. Thank you very much, Your Honor. Not a problem at all. Thank you. Appreciate your time.